## LIFE INSURANCE — APPLICATION FOR — HEALTH OF APPLICANT.

### METROPOLITAN LIFE INSURANCE CO. v. HOWLE.

Decided, June 23, 1903—68 Ohio State, p. 614.

*Life Insurance—Section 3623, Revised Statutes—Copies of Application to Accompany Policies Issued—Where Copy not Returned with Policy—Insurance Company Estopped from Denying Truth of Application—Physician may Testify to Facts Independent of Privileged Communication—Testimony as to State of Health of Person —Condition of Policy that Insured be in Sound Health at Date of Policy—Instructions to Jury.*

1. Where, under Section 3623, Revised Statutes, a full and complete copy of the application for insurance has not been returned with the policy, the insurance company while so in default is estopped from denying the truth of such application, but to make such estoppel available the facts constituting the estoppel must be pleaded by the plaintiff.

2. It is not competent to prove by a physician the communications made to him by his patient in that relation, but such physician may testify as to facts which are within his knowledge independent of such communications. He may testify as to the condition and state of health of his patient, as well as the treatment by him prescribed for his patient.

3. Where the state of health of a person is in question, and one side introduces evidence showing that such person could and did, about the time in question, walk about the house and on the streets and in other places, it is competent for the other side to prove that about the same time the person in question walked but little.

4. Where a policy of life insurance has a condition to the effect that the company assumes no obligation unless the insured is at the date of the policy alive and in sound health, and there is an issue as to whether at that time the insured was in sound health, the insurance company is entitled upon the trial to have the jury instructed unconditionally to find for the company in case they find that the insured was not in sound health at the date of the policy.

Error to the Circuit Court of Cuyahoga County.

This same cause was here once before, and is reported in *Life Ins. Co.* v. *Howle,* 62 Ohio St., 204; the cause now here being the one brought upon the two small policies, one for $126, dated September 25, 1893, and the other for $500, dated November 12, 1894.

The policies were on the life of Sarah Howle, and ran in favor of her husband, said Henry Howle. She died September 5, 1895.

The petition is in the usual form, and avers that he and she duly performed all of the conditions of said policies on their part to be performed, made proofs of death and demanded payment which was refused, followed by a prayer for judgment.

The amended answer is as follows:

"*First Ground of Defense.*—Now comes the Metropolitan Life Insurance Co., defendant in this action, and for the first ground of defense, admits its corporate existence under the laws of the state of New York; the execution of two policies of insurance upon the life of Sarah Howle, in the sums and for the considerations stated in the petition in this case; the payment of the premiums; the death of said life; and denies each and every other allegation in said petition.

"*Second Ground of Defense.*—For its second ground of defense, this defendant says said policies were issued in consideration of the warranties, answers, statements and agreements in the applications therefor by said deceased, made to defendant on September 9, 1893, and October 24, 1894, respectively, copies of which are hereto attached, marked respectively 'Exhibit C,' and 'Exhibit D,' and made part hereof, in which said deceased declared and warranted that the representations and answers therein made were strictly correct and wholly true; that any untrue answer would render the policy issued thereunder null and void; and that neither of said contracts of insurance should bind the defendant, unless, upon their dates and delivery, she was in sound health.

"And defendant says the following answers, warranties and statements in the application, 'Exhibit C,' were willfully false and fraudulently made, to-wit, that the deceased never had pneumonia or disease of the heart or kidneys; never been under any treatment in any dispensary, hospital or asylum; and was on the said September 9, 1893, in sound health.

"And that the following answers, warranties and statements in said application, 'Exhibit D,' were willfully false and fraudulently made, to-wit, that the deceased on said October 24, 1894, was not pneumonia or disease of the heart or kidneys; never had been under any treatment in any dispensary, hospital or asylum; never insured in any other company except this defnedant's; never had been seriously ill; was on said day in sound health; and that no application for insurance on her life had been prior to said day rejected or declined by any other company.

"And defendant says, that prior to said respective days in September, 1893, and October, 1894, said insured had pneumonia and disease of the heart and kidneys; had a miscarriage; had been

under treatment in the Wooster University Dispensary or Hospital at Cleveland, Ohio; had been seriously ill, and an application for insurance on her life had been rejected or declined by an insurance company. And that on neither of said days, nor on the respective days and dates of delivery of said policies was said insured in sound health. All of which was well known to plaintiff and said insured.

"Defendant further says that said answers in said application were material and induced it to issue said policies; that but for such answers and warranties neither of said policies would have been issued; and that the defendant's agent had no knowledge of the falsity or fraud of said answers or any of them.

"Wherefore, this defendant prays to be hence dismissed with its costs."

The reply is a general denial of the answer.

Upon trial to a jury there was a verdict for the plaintiff for the full amount claimed on both policies. A motion for a new trial was overruled, and judgment entered on the verdict. Proper exceptions were taken and saved throughout. The circuit court affirmed the judgment, and thereupon the insurance company came to this court, seeking to reverse the judgments of the courts below. The grounds of error will be stated in the opinion.

C. L. Hollze, for plaintiff in error.

Hart & Canfield and W. S. Kerruish, for defendants in error.

BURKET, C. J.; SPEAR, DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

Upon the trial the defendant insurance company had a witness upon the stand with one of the applications for insurance in his hand, and was proceeding to prove that the answers to the several questions therein were made by said Sarah Howle, and that said answers were false, when counsel for plaintiff below objected on the ground that said defendant had failed to prove in open court that it had returned with said policy a complete copy of said application as required by Section 3623, Revised Statutes. The court sustained the objection, and excluded both of said applications, to which the defendant excepted. Said Section 3623 is as follows:

"Every company doing business in this state shall return with and as part of any policy issued to it, to any person taking such policy, a full and complete copy of each application or other document held by it which is intended in any manner to affect the

force or validity of such policy, and any company which neglects so to do shall, so long as it is in default for such copy, be estopped from denying the truth of any such application or other document; and in case such company neglect, for thirty days after demand made therefor, to furnish such copies, it shall be forever barred from setting up, as a defense to any suit on such policy, any incorrectness or want of truth of such application or other document."

Under the provisions of this section a failure to return a full and complete copy of the application with the policy, works an estoppel, so long as the company shall be in default, and in case of neglect to furnish such copy for thirty days after demand made therefor, such neglect shall be a bar to any and all defenses growing out of such applications and the answers to questions therein contained. The bar here provided for is a permanent estoppel. To make an estoppel or such bar available the facts constituting the same must be pleaded in all cases where the same is practicable.

In this case the plaintiff below should have pleaded the estoppel in his reply, but instead of so doing he contented himself with a general denial, and thereby denied the existence of such applications. As the applications in this case in fact existed, he should have admitted that fact in his reply, and avoided their effect by pleading the failure to return copies, and thereby made the estoppel available. The defendant company was not required in its answer to say whether a full and complete copy of the application had been returned with each policy or not. The denial of the existence of the applications might be taken as an argumentative denial of their return with the policies, but pleadings should be direct and not argumentative. As the pleadings stood the court erred in excluding the evidence.

In the court's charge as to expert testimony the word *plaintiff's* was used when the word *deceased's* was evidently intended. The intention was so clear that it would seem that the jury could not have been misled thereby. The real meaning of the court in other regards as to expert testimony was not so clear as the above mistake, and is not approved, and should not be followed.

The defendant company introduced Dr. Steiner as a witness in its behalf, and asked him the following question:

"Now, Doctor, what, if anything, did Mrs. Sarah Howle say to you during the times that she came to you for examination and treatment as to the length of time of her disease?"

Objection being made the witness was not allowed to answer. Under Section 5241, Revised Statutes, this ruling was correct. That section provides as follows:

"The following persons shall not testify in certain respects: A physician concerning a communication made to him by his patient in that relation, or his advice to his patient."

This question clearly sought to have the physician disclose a communication made by his patient to him in the relation as patient, and was therefore incompetent.

Each policy had this condition:

"Provided, however, that no obligation is assumed by this company prior to the date hereof, nor unless on said date the insured is alive and in sound health."

In view of this condition the defendant company introduced Dr. Crooks as a witness, and the record discloses the following:

"Q. From your treatment of Mrs. Sarah Howle, and the facts you have testified to, what do you say was her state of health on November 12, 1894?
"A. She was not in sound health on that day.
"Q. You may state what was her condition on that day.

"(Objected to; objection sustained).

"Q. What, if anything, did you prescribe for her, if you remember, in November, 1894?

"(Objected to; objection sustained.)"

In each instance the defendant company by its counsel excepted, and stated what the answer would be, and the same was in each instance pertinent and competent.

The evidence so offered was not a communication by the patient to the physician, but was as to the independent knowledge of the physician, and was clearly competent, and the court erred in excluding the same.

The plaintiff offered evidence to the effect that his wife, during the dates in question, walked around the house and to market, and walked as naturally as anybody. To contradict this the defendant company introduced a Mrs. Kendall, a neighbor, and asked her the following question:

"Did the woman walk a great deal or very little? What do you know of your own knowledge as to her going out much or little in those days, if you know?"

Objection being made she was not allowed to answer. She would have answered, if permitted, that in those days Mrs. Howle walked out but little. The insurance company was clearly entitled to this evidence, because it had a direct bearing as to whether or not she was in sound health. As an element to show sound health the plaintiff attempted to prove that she did much walking, and the defendant had a clear right to show that the statements as to the walking were not true.

The insurance company, by its counsel, requested the court to give the following charges to the jury:

"2. If you find from the evidence that Mrs. Sarah Howle was not in sound health on the 12th day of November, 1894, and on the 25th day of September, 1893, the respective dates of the two policies upon which this suit is brought, you must find in favor of the defendant company.

"3. If you find from the evidence that Mrs. Sarah Howle was not in sound health on the 12th day of November, 1894, the date of one of the policies, you must find for the defendant upon that particular policy.

"4. If you find from the evidence that Mrs. Sarah Howle was not in sound health on the 12th day of November, 1894, and on the 25th day of September, 1893, or on either of said days, you must find for the defendant, and it makes no difference whether she knew or did not know that she was not in sound health."

The court refused to give either of said requests, and said to the jury:

"I have been asked by the defendant to make certain charges. Except as I have given the matter in a qualified way in the general charge I decline to give these requests."

The charge as given on the subject, and which the court conceded to the jury to be in a "qualified way" was as follows:

"I say to you, gentlemen, that if you find Mrs. Howle was not in sound health, within the meaning of the definition I have given you, if she was not thus in sound health on September 25, 1893, and November 12, 1894, under such circumstances, it would be your duty to render a verdict for the defendant. If you find that the plaintiff has complied with the terms of the policy in question,

and if Sarah Howle was in sound health at the time of the issuance of these policies in question, under such circumstances the plaintiff would be entitled to recover."

The charges as requested are direct and to the point, and should have been given, while the charge as given referred to the circumstances, and was well calculated, if not intended, to furnish a suggestion to the jury by which they might ease their consciences and bring in a verdict against the insurance company. A court in charging a jury should so evenly balance the scales of justice as not to indicate by a wink, look, shake of the head, or peculiar emphasis, as to his notions as to which way the verdict should go. When a case is to be submitted to a jury at all, it should be impartially submitted, and if the court feels that the case is so clear as to require an indication from him, he should direct a verdict, and then his action can be easily reviewed in a higher court; but if he gives a charge which looks fair on paper, but which is in fact distorted by his looks, attitudes, emphasis, winks, and rolling of the eyes, an unjust result is often attained which can not be corrected in a higher court.

There is not much difference between the charge as requested and as given, yet there is enough to disclose to any good trial lawyer that a jury would understand that the court felt that the plaintiff ought to recover, and therefore the insurance company did not have a fair trial.

The judgments of the lower courts will be reversed and the cause remanded for a new trial.

*Judgments reversed and cause remanded.*